WATER TECHNOLOGIES CORPORA-
TION and Water Pollution Control Sys-
tems, Inc., Plaintiffs and Cross-Plain-
tiffs,

and

Aqua-Chem, Inc., Plaintiff and
Cross-Defendant,

v.

CALCO, LTD., William J. Gartner and
Robert B. Kalnitz, Defendants.

No. 82 C 4330.

United States District Court,
N.D. Illinois, E.D.

June 23, 1983.

W.A. Van Santen, Wegner, Stellman, McCord, Wiles & Wood, Chicago, Ill., Harness, Dickey & Pierce, Birmingham, Mich., Joseph Krieger, Mason, Kolehmainen, Rathburn & Wyss, Chicago, Ill., for plaintiffs.

Robert E. Wagner, Sidney Wallenstein, Ralph R. Rath, Wallenstein, Wagner, Hattis, Strampel & Aubel, Chicago, Ill., Fred Wiviott, Whyte & Hirschboeck, Milwaukee, Wis., for defendants.

## MEMORANDUM OPINION AND ORDER

ROSZKOWSKI, District Judge.

Before the court is cross-defendant's motion to partially dismiss for failure to join an indispensible party; cross-defendant's motion for partial summary judgment; defendants' motion for summary judgment or, in the alternative, for a stay of discovery; plaintiff's motion to compel discovery; and, motions by defendants and cross-defendant to strike plaintiff's rebuttal to the above mentioned motions. Jurisdiction is based upon 28 U.S.C. § 1338.

For the reasons stated below, cross-defendant's motion to partially dismiss for failure to join an indispensible party is granted. The court, on its own motion, dismisses the claims against defendants with respect to patents owned by the absent party. Plaintiffs are granted leave to amend their complaints to join the absent party. Cross-defendant's motion for partial summary judgment is granted. Defendants' motion for summary judgment is denied. The two opposing motions regarding plaintiff's discovery requests are not addressed by the court due to defendant's subsequent compliance. Finally, the motions to strike plaintiff's rebuttal are denied.

## FACTS

Plaintiff, Water Technologies Corporation, through its wholly owned subsidiary, Water Pollution Control Systems, Inc. (collectively, "Water Tech"), is the exclusive licensee under two United States Letters Patent owned by licensor and cross-defendant, Aqua-Chem, Inc. ("Aqua-Chem"). Aqua-Chem is the exclusive licensee under two other United States Letters Patent owned by the Kansas State University Re-

search Foundation ("KSU"), who was not made a party to this action. These two latter patents were exclusively sublicensed in part by Aqua-Chem to Water Tech.

Water Tech brought this action against Calco, Ltd., William J. Gartner, a consultant to Calco, and Robert B. Kalnitz, Calco's president (all three parties are collectively referred to as "Calco"). Water Tech alleges that Calco has infringed and is currently infringing the four patents contrary to the provisions of subsections (a), (b), and (c) of 35 U.S.C. § 271, and in violation of unspecified unfair competition laws. Aqua-Chem, as licensor, has been joined to these claims as an involuntary plaintiff pursuant to Rule 19(a) of the Federal Rules of Civil Procedure.

Water Tech has also cross-claimed against Aqua-Chem, under Rule 13(g) of the Federal Rules, alleging unfair competition, breach of contract, and unjust enrichment. Aqua-Chem later joined Water Tech's infringement claims against Calco and has cross-claimed against Water Tech for breach of the license agreement due to the latter's nonpayment of royalties.

## I. AQUA–CHEM'S MOTION TO DISMISS CLAIMS INVOLVING KSU'S PATENTS

Aqua-Chem moves to dismiss Counts I and VII of the complaint in that they require the resolution of issues involving the infringement and validity of patents owned by KSU, which was not joined to this action. Aqua-Chem argues that KSU, as owner of such patents, is an indispensible party to this litigation and that this court must accordingly dismiss such claims against Aqua-Chem pursuant to Rule 19.

Water Tech's first response is that Aqua-Chem should be willing to allow the two KSU patents to remain in the suit "until discovery is obtained from Calco regarding the specifics of the infringing process being carried out at Calco." This court is unable to perceive of any way in which this argument even goes to the issue of whether KSU is indispensible. Secondly, Water Tech argues that, in spite of the involun-

tary plaintiff provision of Rule 19(a), this court should proceed without joining KSU. It insists that KSU has refused to take part in this proceeding and that "there is no other way of securing justice."

Rule 19 has different provisions for determining whether joinder is required. Which provision applies depends on whether (1) the person whose joinder is in issue is subject to service of process, and (2) joining the person would deprive the court of jurisdiction over the subject matter. If the person can be served and jurisdiction would not be defeated, joinder is feasible; if not, joinder is not feasible. As the parties have not addressed the question of whether or not joinder of KSU is feasible, both possibilities are considered below. In either event, Water Tech's failure to join KSU necessitates dismissal of the Counts based on the KSU patents.

### A. *If KSU's Joinder is Feasible*

Where joinder is feasible, an absent party must be joined if:

> (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) *leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.*

Rule 19(a), Fed.R.Civ.P. (Emphasis added).

In order to determine that Aqua-Chem and Calco would not be subject to a substantial risk of incurring multiple obligations should KSU not be joined, it must be certain that KSU will be bound by any decision of this court by the doctrine of collateral estoppel. *Tycom v. Redactron Corp.*, 380 F.Supp. 1183, 1189–90 (D.Del. 1974). As discussed below, there is uncertainty as to whether KSU would be collaterally estopped, and this uncertainty necessitates the joinder of KSU.

■ Under the collateral estoppel rule set forth by the Supreme Court in *Blonder-Tongue Laboratories v. University of Illinois Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971), KSU would be bound by the outcome of this litigation if it were determined that, as owner of the patents in question, it is in privity with Water Tech and that it had a "fair opportunity procedurally, substantively, and evidentially to pursue [the] claim" in this court through its privy. *Id.* at 333, 91 S.Ct. at 1445 *quoting Eisel v. Columbia Packing Co.*, 181 F.Supp. 298, 301 (D.Mass.1960).

In *Tycom v. Redactron Corp.*, 380 F.Supp. 1183, 1189–90 (D.Del.1974), the Court required the joinder of an absent patent owner to an action brought by its exclusive licensee against infringers. While noting that the absent owner would probably be collaterally estopped by its decision, the Court nevertheless felt compelled to order the owner's joinder due to the uncertainty of the collateral estoppel issue. The court concluded that such uncertainty created a substantial risk of leaving the present defendants vulnerable to multiple litigation if the patent owner were not made a party.

■ Because of the possibility that some future court—perhaps with facts not contained in the present record before this court—may determine that KSU was not in privity with Water Tech and did not have a fair opportunity to litigate its claims, it is apparent that there exists a substantial risk of prejudice to the present defendants within the meaning of 19(a). *Tycom Corp.*, *supra* at 1189–90. Accordingly, this court finds that KSU is a necessary party who must be joined if feasible.

■ Although Calco has not moved to dismiss under Rule 19 with respect to the claims against it regarding patents owned by KSU, this fact does not prevent the court from raising the defect *sua sponte* when joinder is clearly required. *In re Penn Central Securities Litigation*, 335 F.Supp. 1026, 1038 (E.D.Pa.1971); 3A Moore's Federal Practice ¶ 19.19 (2d ed. 1982). Thus, KSU's joinder is held necessary not only to Water Tech's claims against Aqua-Chem, but to those against Calco as well.

**B.** *If KSU's Joinder is Not Feasible*

If KSU is not subject to service of this court, or if its joinder would deprive this court of subject matter jurisdiction over the action, it must be further determined whether to proceed in its absence under the provisions of 19(b), or to dismiss the claims with respect to the two patents owned by KSU. Subsection (b) provides four factors to be considered in this regard.

First, the *extent* of prejudice to the absentee or to the existing parties must be weighed. The Advisory Committee Notes on Amended Rule 19 cite *A.L. Smith Iron Co. v. Dickson*, 141 F.2d 3 (2d Cir.1944), in which it was suggested that the infringer's interest in being immune from a second suit by the owner overrides a licensee's interest in maintaining his action. 141 F.2d at 6. In the case at bar, Aqua-Chem and Calco are both vulnerable to suit by KSU if KSU is not joined.

The second factor to be considered is "the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided." Rule 19(b), Fed.R.Civ.P. Insofar as the issues before this court regard the infringement and validity of patents owned by KSU, no remedy has been suggested by Water Tech which would avoid exposing Aqua-Chem and Calco to the possibility of suffering multiple liability if KSU were to relitigate the issues before the court and if it were not barred by the doctrine of collateral estoppel.

The third factor asks "whether a judgment rendered in the person's absence will be adequate." Rule 19(b), Fed.R.Civ.P. This requires the court to consider the propriety of granting incomplete relief to the present parties. 3A Moore's Federal Practice ¶ 19.07–2[3] (2d ed. 1982). Considering the advantages of complete relief in a single action and the waste of time of render-

ing partial adjudication among the present parties, the *Tycom* Court stated:

> [P]atent suits most often consume a great amount of court time due to their complexity and because there is a great public interest in determining the status of a patent once and for all, patent controversies, if possible, should be settled in a single action. 380 F.Supp. 1183, 1190 (D.Del.1974), *citing Blonder-Tongue Laboratories, supra,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971).

To be certain that KSU is bound by any decision of this court and is compelled to bring any claims it may have against the present defendants, this litigation should not proceed in its absence.

The fourth and final factor requires the court to inquire into "whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder." Rule 19(b), Fed.R.Civ.P. It is clear that dismissal by this court would prejudice Water Tech only minimally, if at all, considering its ability to join KSU as an involuntary plaintiff. The procedure, permissible under 19(a), allows Water Tech to join KSU to the suit, if service cannot be effected, to bind KSU to the ultimate decision of this court. 3A Moore's Federal Practice ¶ 19.06.

In the leading Supreme Court case on this procedure, Justice Taft held that

> [t]he [patent] owner beyond the reach of process may be made a coplaintiff by the licensee, but not until after he has been requested to become such voluntarily. If he declines to take any part in the case, though he knows of its imminent pendency and of his obligation to join, he will be bound by the decree which follows. We think this result follows the general principles of res judicata. *Independent Wireless Telegraph Co. v. Radio Corp. of America,* 269 U.S. 459, 473, 46 S.Ct. 166, 171, 70 L.Ed. 357 (1926).

Consideration of these four factors leads to the conclusion that the litigation should not proceed in the absence of KSU as a party. This holding is consistent with Supreme Court precedent which has long recognized that a patent owner is an indispensible party to an infringement or validity suit brought by his licensee. *Waterman v. Mackenzie,* 138 U.S. 252, 255, 11 S.Ct. 334, 335, 31 L.Ed. 923 (1891). Accordingly, even the granting of the right to sue to the licensee would not circumvent the required joinder of the owner. *Crown Die & Tool Co. v. Nye Tool & Machine Works,* 261 U.S. 24, 44, 43 S.Ct. 254, 259, 67 L.Ed. 516 (1923). *See also Agrashell, Inc. v. Hammons Products Co.,* 352 F.2d 443, 446 (8th Cir.1965); *Switzer Bros., Inc. v. Byrne,* 242 F.2d 909, 912 (6th Cir.1957); *Tycom Corp. v. Redactron Corp.,* 380 F.Supp. 1183 (D.Del.1974).

This court, therefore, grants Aqua-Chem's motion for failure to join KSU with respect to the patents owned by KSU. For the same reasons, the court also dismisses *sua sponte* all claims against Calco that involve adjudication of the infringement and validity of patents owned by KSU. Leave is granted to both Water Tech and Aqua-Chem to amend their complaints to join KSU as a defendant if it can be served, or as an involuntary plaintiff if it cannot be served, within a reasonable time from this date.

## II. AQUA–CHEM'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Counts II through VI of the complaint contain various theories under which liability is allegedly imposed upon Aqua-Chem for Calco's infringements. Aqua-Chem asserts that with respect to each of these counts, and in order to rule in favor of the plaintiffs, this court must necessarily find that Aqua-Chem has some duty to prevent infringement or to take legal action against infringers. Aqua-Chem's motion rests on the argument that the license agreement between Aqua-Chem and Water Tech contains no provision creating such a duty and that, as a matter of law, no such duty may be implied.

Water Tech does not deny that the agreement contains no provision requiring Aqua-Chem to sue infringers, nor does it offer any authority that such a provision may be implied. Instead, Water-Tech raises new

matters not alleged in the complaint, especially with respect to its breach of contract count, arguing that Aqua-Chem failed to properly perform other obligations under the license agreement unrelated to the issues now before the court.

Summary judgment under Rule 56 is an extreme remedy which should be used sparingly. *City National Bank of Fort Smith, Arkansas v. Vanderboom,* 422 F.2d 221, 223 (8th Cir.), *cert. denied,* 399 U.S. 905, 90 S.Ct. 2196, 26 L.Ed.2d 560 (1970); *Homan Mfg. Co. v. Long,* 242 F.2d 645 (7th Cir.1957). It will be entered only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56, Fed.R.Civ.P. In making this determination, the court will draw inferences from the underlying facts contained in such documents in a light most favorable to the non-movant. *Technograph Printed Circuits, Ltd. v. Methode Electronics, Inc.,* 356 F.2d 442, 446–47 (7th Cir.), *cert. denied,* 384 U.S. 950, 86 S.Ct. 1570, 16 L.Ed.2d 547 (1966).

An examination of Counts II through VI of the complaint, however, reveals that each of these claims are dependent upon a finding that Aqua-Chem is obligated under the license agreement to sue third party infringers. Count II alleges that Aqua-Chem has engaged in unfair competition "[b]y refusing to enforce said patents." Count III alleges that Aqua-Chem has breached the contract "by doing nothing to prevent the infringing act of Calco." It is alleged in Count IV that Aqua-Chem has been unjustly enriched by accepting Water Tech's royalty payments "while at the same time ... do[ing] nothing to stop the patent infringement." Count V contains a request for specific performance of the license agreement to force Aqua-Chem to sue Calco.[1] Count VI, which contains a

request to set-off litigation expenses incurred by Water Tech against royalties due Aqua-Chem, is also premised upon Aqua-Chem's "refus[al] to cooperate or assist in any way to prosecute or prevent the infringing acts carried out by the defendants."

Water Tech does not contest the fact that there is no express provision in the license agreement requiring Aqua-Chem to sue third party infringers. Therefore, there remains only the legal question of whether there exists any implied warranty or obligation which required such action on the part of Aqua-Chem.

The rule is that

[t]here is no implied agreement by a licensor to protect the licensee by suing infringers beyond allowing the use of his name in a suit brought against an infringer by such licensee at the latter's expense.... In the absence of a convenant to protect the licensee against infringers there is no obligation on the part of the licensor to do so. *Deller's Walker on Patents* § 406 (2d ed. 1965). *See also Heidelberg Brewing Co. v. North American Service Co.,* 26 F.Supp. 342, 344 (E.D.Ky.1939); *Martin v. New Trinidad Lake Asphalt Co.,* 255 F. 93, 96 (D.C.N.J. 1919).

This settled point of law is undisputed by Water Tech. Instead, Water Tech, in its response to the motion, introduced several entirely new theories wholly unrelated to the issue of Aqua-Chem's failure to prevent infringement raised in its complaint.

 Water Tech's new breach of contract allegations and its related argument regarding the propriety of its nonpayment of royalties during the pendency of this suit are unrelated to the breach of contract theory described in Count III of the complaint. They therefore cannot be considered by this court in ruling on the motion for summary judgment.

---

**1.** This request is now moot because Aqua-Chem has since joined Water Tech's action against Calco.

Water Tech's attempt to interject an alternative theory for Count II, its unfair competition claim, is misplaced. Count II of the complaint alleges unfair competition solely on the basis of Aqua-Chem's failure to sue Calco. To allow Water Tech to now argue that Aqua-Chem actively engaged in Calco's infringement would deprive Aqua-Chem of notice of a claim found nowhere in the pleadings.

Nor do Counts IV and VI have any merit once it is established that Aqua-Chem is not obligated to sue infringers. Aqua-Chem's receipt of royalties despite Calco's infringement cannot be said to constitute unjust enrichment where Aqua-Chem has a contractual right to the payments and is under no duty to prevent third parties from infringement upon the licensed patents. The setting-off of litigation expenses against royalties due is likewise inappropriate absent a duty to sue.

■ Because Counts II through VI necessarily require that Aqua-Chem be obligated to sue third party infringers, no express provision exists in the license agreement, and no such obligation may be implied, Aqua-Chem is entitled to pretrial relief as a matter of law. Water Tech's new allegations and related arguments were not raised in Counts II–VI of the complaint and will not be considered by this court in ruling on the summary judgment motion. They may be considered later in ruling on Aqua-Chem's cross-claim against Water Tech for breach of the license agreement.

■ It is well settled that summary judgment may be employed in disputes involving the interpretation of an unambiguous contract. *Davis v. Chevy Chase Financial, Ltd.*, 667 F.2d 160, 169 (D.C.Cir. 1981); *Castaneda v. Dura-Vent Corp.*, 648 F.2d 612, 619 (9th Cir.1981); *Tokio Marine & Fire Insurance Co., Ltd. v. McDonnell-Douglas Corp.*, 617 F.2d 936, 940 (2d Cir. 1980). Accordingly, summary judgment is granted to Aqua-Chem with respect to Counts II through VI of the complaint.

### III. CALCO'S MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE FOR A STAY OF DISCOVERY

Three theories have been offered by Calco in support of its motion for summary judgment on Water Tech's infringement action. First, it is contended that Water Tech no longer has standing to bring suit on the patents in question because they are no longer licensees of Aqua-Chem. It is argued that because of Water Tech's nonpayment of royalties, Aqua-Chem effectively terminated the license agreement on September 10, 1982 pursuant to a provision of that agreement. Calco insists that such termination dissolves all rights that Water Tech had as licensee leaving it remediless for damages incurred but not sued upon during the pendency of its status as licensee.

■ Even if the agreement was terminated prior to the filing of this infringement action, it cannot be said that Calco is entitled to a judgment as a matter of law. Clearly, any injury sustained by Water Tech due to Calco's infringement would not be corrected by the mere termination of Water Tech's licensee status. An exclusive licensee may bring suit for damages in his own name after the license has terminated for infringements committed during the pendency of the license. *R. Ellis, Patent Licenses* § 386 (Deller 3d ed. 1958) *citing Ulman v. Chickering*, 33 F. 582 (D.Mass. 1888).

■ Although this rule applies only to damage claims, Calco is not entitled to pretrial judgment with respect to the injunctive relief requested by Water Tech either. This is true because of the currently unresolved factual issue of whether the license agreement has been properly terminated by Aqua-Chem. The purported termination pursuant to Article VII(B) of the agreement is premised on a finding that Water Tech has "defaulted in the payment of royalties." If, however, it may be said that Water Tech was justified in not paying further royalties due to an earlier material failure of performance by Aqua-Chem, termination would not have been proper. *See*

*Research Frontiers, Inc. v. Marks Polarized Corp.*, 295 F.Supp. 1050, 1053 (E.D.N.Y.1969); Restatement, Second, Contracts, §§ 237, 242. The question of whether Water Tech defaulted or Aqua-Chem materially breached before the royalty payments ceased is a genuine issue of fact which cannot be resolved by summary judgment.

 Calco's second argument, that Water Tech *never* had the right to sue infringers is also meritless and does not entitle it to relief by summary judgment. It is settled law that an exclusive licensee may bring suit against an infringer, joining the licensor as an involuntary plaintiff to the action. *Independent Wireless Telegraph Co. v. Radio Corporation of America*, 269 U.S. 459, 46 S.Ct. 166, 70 L.Ed. 357 (1926). Calco's last resort contention that Water Tech was a non-exclusive licensee, thus, making the rule of *Independent Wireless* unavailable to the plaintiff and barring its action as a matter of law, *e.g.*, *Life Time Doors Inc. v. Walled Lake Doors*, 505 F.2d 1165 (6th Cir.1974), is wholly inconsistent with Calco's apparent admission in its motion that Water Tech is an exclusive licensee. Defendant's Brief at 2. Nevertheless, even if it were recognized that such a factual dispute exists, this issue itself would preclude Calco's motion for summary judgment.

The third and final argument by Calco in support of its motion is based upon its fear of incurring double liability if both Aqua-Chem and Water Tech are permitted to bring actions for infringement. In light of the fact that Aqua-Chem and Water Tech would be injured in different respects by the infringement of a third party, this argument is also without merit. *See R. Ellis, Patent Licenses* § 404 (Deller 3d ed. 1958). Each plaintiff must prove up its own injury.

For the reasons stated above, Calco's motion for summary judgment is denied. Calco's alternative motion to stay discovery and Water Tech's motion to compel discovery need not be decided by this court because Calco has already filed its answers to Water Tech's interrogatories as of January 26, 1983. The motions to strike Water Tech's rebuttal are denied.

It is so ordered.